

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| IN THE INTEREST OF A.N.G., a CHILD. | § § § § § § § | No. 08-19-00088-CV<br><br>Appeal from the<br><br>383rd District Court<br><br>of El Paso County, Texas<br><br>(TC# 2010CM094) |

## **O P I N I O N**

Benjamin Joseph Gutierrez ("Father") and Araceli M. Jimenez ("Mother") are the parents of A.N.G., a minor child. Father, an attorney who now is acting *pro se*, appeals from the trial court's order granting Mother's petition to modify a prior order in a suit affecting the parent-child relationship. Father complains the trial court committed reversible error in granting a directed verdict favorable to Mother on matters pertaining to the parties' joint managing conservatorship. Father also complains the court erred in modifying the geographic restriction imposed on the child's primary residency, erred in failing to consider the report of the court-appointed counselor, erred in determining awards for child support and medical support, and erred in awarding attorney's fees. We affirm.

# I.  BACKGROUND

On February 6, 2012, the trial court signed[1] an Order Adjudicating Parentage (the Parentage Order) which appointed Father and Mother as joint managing conservators of A.N.G. and giving Mother the exclusive right to designate A.N.G.'s residence within El Paso County. The Parentage Order included both a possession and access schedule for a child under three and an extended standard possession order that took effect after A.N.G. reached three years of age. The Parentage Order also ordered Father to pay child support and medical support in the amount of $240 and $57.17, respectively, on a monthly basis.

On December 11, 2012, Mother filed a petition to modify the Parentage Order asserting that circumstances of the child, a conservator, or other party affected by the order had materially and substantially changed since the date of its rendition. Specifically, Mother requested a reduction in Father's periods of possession and access to A.N.G. and requested these periods be made contingent upon continued and continuous visitation. Mother also requested that Father's periods of visitation be continuously supervised by an entity or person chosen by the court pending a reestablishment of the parent-child relationship. Mother generally asserted a modification of the prior order would be consistent with the best interest of the child.

In July 2013, Mother served the petition to modify the prior order on Father after months of searching for his physical address. In September, she amended her petition to request that she be appointed sole managing conservator of A.N.G. In October, Father filed an answer generally denying Mother's allegations. In November, after a hearing in which Mother appeared with her

---

[1] On its face, the order indicates the trial court heard the matter on March 29, 2011, April 19, 2011, and June 6, 2011.

attorney but only Father's attorney appeared, the trial court entered a miscellaneous order that immediately suspended all visitation until Father presented himself to the court. The trial court also ordered Father to submit to a psychological evaluation before December 16, 2013.

On June 27, 2014, the order[2] suspending Father's visitation was set aside. In November 2015, Father filed a *pro se* counter petition, amended in August 2017, in which he asserted a material and substantial change in circumstances due only to the modification proceedings. Father asserted his requests were made "[s]o long as these proceedings persist . . . ." Interim temporary orders were entered on May 15, 2018, in which the trial court granted Father visitation with A.N.G. at paternal grandparents' house each Wednesday and Saturday for two-hour periods, ordered both parents to participate in counseling with the child, and ordered each parent to produce income information. In October 2018, Mother filed a second amended petition to modify which added a request for modification of child support.

On October 29, 2018, before the start of a scheduled jury trial, Mother sought to non-suit the issues concerning her requests to be appointed sole managing conservator and, alternatively, the lifting of the geographic restriction under joint managing conservatorship. As Mother described to the court, the matters left pending would be decided at the court's discretion and the only issues being submitted to the jury would be Father's request to be appointed sole managing conservator, or in the alternative, being appointed the joint managing conservator with the exclusive right to designate the primary residence of the child. Afterwards, the jury heard testimony from both parents.

---

[2] Although the order is titled, "Order Setting Aside Default Judgment," it is otherwise described in substance as "temporary orders."

Immediately after presentation of such testimony, Father rested. Mother next moved for a directed verdict on the issues of modification of the conservatorship of A.N.G. urging that Father had failed to establish a material or substantial change in circumstances and that modification would be in the best interest of the child. Mother requested the court grant the directed verdict and proceed directly to those issues decided within the court's discretion including an award of attorney's fees. The trial court granted Mother's motion for directed verdict; the trial court also found that Father was a vexatious litigant; awarded attorney's fees in the amount of $13,231.41, and anticipatory attorney's fees in the amount of $10,000 in the event of an appeal to the Court of Appeals, and in the amount of $5,000 in the event of an appeal to the Texas Supreme Court; and ordered a bond of $10,000 be set pending any further litigation filed by Father. The trial court orally pronounced that Father was awarded possession and access according to the standard possession order in the Family Code; also, the court awarded a right of first refusal to Father and ordered no geographical restriction would be imposed. Lastly, the trial court pronounced child support would be set based on an annual income of $43,000, medical support would be set at $242.98 a month with each party splitting the cost of any uncovered medical expenses.

On January 4, 2019, the trial court signed a written order titled, "Order in Suit to Modify Parent-Child Relationship," granting Mother's petition to modify the prior order. In relevant terms, the written order provided as follows: (1) Mother and Father remained joint managing conservators of A.N.G.; (2) Mother remained the conservator having the exclusive right to designate the primary residence of A.N.G. within El Paso County, Texas; (3) possession and access granted to Father according to the standard possession order; (4) child support ordered at $514 a month; (5) medical support ordered at $242.98 a month; and (6) attorney's fees awarded to Mother in the amount of

4

$13,231 and anticipatory attorney's fees in the amount of $10,000 in the event of an appeal to the Eighth Court of Appeals and in the amount of $5,000 in the event of an appeal to the Texas Supreme Court.

On January 24, 2019, Father filed a Request for Findings of Fact and Conclusions of Law, followed by a Notice of Past Due Findings of Fact and Conclusions of Law on February 27, 2019, neither of which received a response from the trial court. On February 5, 2019, Father filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## II. DISCUSSION

In five issues on appeal, Father asserts the trial court erred as follows: (1) in not permitting the jury to proceed to verdict "to determine if a modification is warranted when factually and legally there was grounds for material and substantial change to be held[,]" (2) in modifying the geographic restriction when the trial court directed the verdict from the jury, (3) in not admitting the counselor's report, (4) in setting child and medical support, and (5) in awarding attorney's fees.

We consider each issue but not in the order presented.

### A. Briefing Waiver

As a preliminary matter, Mother contends that Father waived each of his issues due to inadequate briefing. To some degree, we agree.

The Texas Rules of Appellate Procedure control the required contents and the organization for an appellate brief. *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.). To comply with Rule 38.1, an appellant's brief must contain clear and concise arguments including appropriate citations to legal authority and to the record. TEX. R. APP. P. 38.1(i); *Collins v. Walker*, 341 S.W.3d 570, 575 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (sub. opinion). Mere

5

uttering of brief, conclusory statements unsupported by citation to legal authorities does not satisfy briefing requirements. *Collins*, 341 S.W.3d at 575. The Texas Supreme Court has continuously recognized that an issue may be waived when appellant fails to provide citations, argument, or analysis. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015). Yet, we are also instructed by the Supreme Court of Texas "to construe the Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule." *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 n.15 (Tex. 2004) (quoting *Verburgt v. Dorner*, 959 S.W.2d 615, 616-17 (Tex. 1997)).

Considering that a party should not lose its right to appeal based on an unduly technical application of the procedural rules, we are still not required to perform research nor develop an argument for an appellant who inadequately prepares an appellate brief. *Tucker v. Fort Worth & W. R.R. Co.*, No. 02-19-00221-CV, 2020 WL 3969586, at *1 (Tex. App.—Fort Worth June 18, 2020, pet. denied) (mem. op.). Stated differently, "[w]e have no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error." *Id*.

### 1. Counselor's Reports

In Father's third issue he references that the parties were ordered to schedule appointments with Rosalba Navarrete, in which Navarrete would make reports on the progress to the court. And Father further states that he currently has pending motions before the trial court relating to the availability of Navarrete's report. Father then argues it is unclear whether Navarrete's report was considered in the court's judgment given that the trial court did not file any findings of fact or conclusions of law.

6

The appellate record shows that Navarrete was not called to testify, no counselor's report was ever entered into evidence, and no mention of counseling was made during trial. Beyond Father's bare assertion about the trial court ordering such counseling, he otherwise makes no clear and concise argument about the counseling report, nor provides proper citation to authorities. *See* TEX. R. APP. P. 38.1(i). Because Father's third issue does not comply with the requirements of Texas Rule of Appellate Procedure 38.1, he has waived it on appeal. Because it has been waived, we overrule Father's third issue.

### 2. Child and Medical Support

The trial court's order includes a child support order and a medical support order for the cost of health insurance coverage for A.N.G. Father was ordered to pay child support in the amount of $514 per month and medical support in the amount of $242.98 per month, with both payments beginning on November 1, 2018. In his fourth issue, Father asserts the trial court abused its discretion by ordering child support and medical support that fails to account for his historical earnings and notable debts. He argues no evidence shows his actual earnings had increased; and claims the evidence showed several instances of indigency. Father generally contends the increase in child support and medical support "is unsustainable for [Father] in the long run due to [his] other associated debts" and his "businesses require liquid assets on hand to run successfully" therefore, the amount of support ordered will accelerate his insolvency.

A trial court is permitted to modify an order providing support for a child pursuant to the Texas Family Code. *See* TEX. FAM. CODE ANN. § 156.401(a). Furthermore, the trial court sets support according to guidelines set out in the Texas Family Code. *See* TEX. FAM. CODE ANN. § 154.061-.070, .121. From briefing, it is unclear whether Father's complaint is based on the

7

modification of the child support itself or of the amount the child support was set at, or both. Father neither explains how the trial court abused its discretion in calculating his child support obligation nor what he believes the correct calculations should have been. Other than a passing reference, he does not further address the medical support order.

Even construing Father's brief liberally, he fails to guide us to any authorities showing the trial court abused its discretion in its child and medical support orders. TEX. R. APP. P. 38.1(i); *Fox v. Alberto*, 455 S.W.3d 659, 668 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Although Father filed a request for findings of fact and conclusions of law, his request was not made within 20 days after October 29, 2018, the date the court rendered the child support order. *See* TEX. FAM. CODE ANN. § 154.130 (a)(1) (stating the trial court shall make required findings "if a party files a written request with the court before the final order is signed but not later than 20 days after the date of rendition of the order."). When no findings of fact or conclusions of law are filed, we presume that the trial court made such findings and conclusions necessary to support the judgment. *In re D.S.*, No. 07-12-00312-CV, 2013 WL 625725, at *2 (Tex. App.—Amarillo 2013, no pet.).

Our review of the record supports the trial court's modification of support as it had been at least eight years since the prior order and there was a showing of Father's changed circumstances. TEX. FAM. CODE ANN. § 156.401(a). The record also shows the evidence supported the trial court's finding of an earning capacity of $43,000 when Father testified such was a schoolteacher's salary in El Paso. Father also testified to having several advanced degrees, being licensed to teach in Texas, and being a solo practicing attorney. Mother testified that child support was set at a substitute teacher rate in the prior order. Without controverting evidence from Father about his actual earnings (which he failed to provide), the trial court acted properly in relying on the

8

testimony given by him as to his abilities and his earning potential. *See* TEX. FAM. CODE ANN. § 154.066(a). Father testified he was currently ordered to pay $247 per month for the cost of health insurance for A.N.G. We conclude the trial court's implied findings are supported by the record. We overrule Father's fourth issue.

### 3. Attorney's Fees

In his fifth issue, Father asserts the court's award of attorney's fees are "unreasonable and unnecessary when the party seeks litigation for years only to nonsuit at the commencement of the jury trial." Father asserts the issue with the award of attorney's fees is that it "include[s] efforts and activities" regarding the requests Mother non-suited and that they are "associated with actions includ[ing] avoidance of Mediation . . . or drafting a motion to strike a jury trial . . . ."

We are unclear what Father's specific complaint to attorney's fees is because he cites no authority in his brief regarding attorney's fees nor otherwise develops a clear and cogent argument. Without more, this issue is inadequately briefed and presents nothing for our review. TEX. R. APP. P. 38.1(i); *In Interest of E.G.*, No. 02-16-00302-CV, 2017 WL 3821862, at *4 (Tex. App.—Fort Worth Aug. 31, 2017, no pet.). Accordingly, Father's fifth issue is overruled.

## B. Change in Conservatorship

In his first issue, Father asserts the trial court erred in granting a directed verdict against him and in favor of Mother. Father argues the trial court erred in not permitting the jury to decide whether there was a material and substantial change warranting a modification of conservatorship. Father contends that there was "notable" evidence to show a material and substantial change.

### 1. Standard of Review

"A directed verdict in favor of defendant is appropriate when the plaintiff does not present

evidence to raise a fact issue that is essential to the plaintiff's right of recovery." *Brazoria County Children's Protective Services v. Frederick*, 176 S.W.3d 277, 279 (Tex. App.—Houston [1st Dist.] 2004, no pet.). We review a granted directed verdict under the legal sufficiency standard and we are required to review the evidence in the light most favorable to the party against whom the directed verdict was rendered and we must disregard all contrary evidence and inferences. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005); *Connell v. Connell*, 889 S.W.2d 534, 538 (Tex. App.—San Antonio 1994, writ denied). We must credit all favorable evidence if reasonable jurors could and disregard any contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 827.

### 2. Applicable Law

A trial court may modify the terms and conditions of conservatorship only if the modification is in the child's best interest, and the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of (1) the rendition of the order; or (2) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based. TEX. FAM. CODE. ANN. § 156.101(a)(1). The party seeking modification bears the burden to establish these elements by a preponderance of the evidence. *In re B.L.J.P.*, No. 04-14-00015-CV, 2014 WL 5020121, at *2 (Tex. App.—San Antonio Oct. 8, 2014, no pet.) (mem. op.). In determining whether a sufficient change in circumstances has occurred warranting a modification, the movant must show evidence of the conditions that existed at the time of the prior order compared with evidence of the conditions that exist at the time of the modification hearing. *Interest of L.B.*, No. 02-19-00345-CV, 2020 WL 1808486, at *5 (Tex. App.—Fort Worth Apr. 9, 2020, pet. denied) (mem. op.). Without both historical and current

10

evidence of relevant circumstances, the court has nothing to compare and cannot determine whether a change of circumstances has occurred. *Zeifman v. Michels*, 212 S.W.3d 582, 589 (Tex. App.—Austin 2006, pet. denied). A trial judge has the discretion to find that no evidence has been produced to show a material and substantial change in circumstances and find no fact question exists for the jury to decide. *Frederick*, 176 S.W.3d at 279; *see also In re C.A.N.M.*, No. 02-04-200-CV, 2005 WL 1356443, at *3 (Tex. App.—Fort Worth June 9, 2005, no pet.) (mem. op.) ("A directed verdict is proper only when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent or when the evidence is insufficient to raise a material fact issue.").

### a. Judicial Admission

Father first asserts an argument that Mother made a judicial admission that circumstances had materially and substantially changed since the previous order in her requests for sole managing conservator and lifting of geographic restriction in her prior pleadings.

In a modification proceeding, if both parties' claims contain the common essential element of changed circumstances of one or more of the parties, one party's allegation that the essential element is met constitutes a judicial admission. *In re L.C.L.*, 396 S.W.3d 712, 718 (Tex. App.—Dallas 2013, no pet.) ("One party's allegation of changed circumstances of the parties constitutes a judicial admission of the common element of changed circumstances of the parties in the other party's similar pleading."). Admissions in trial pleadings are observed as judicial admissions and require no proof of the admitted fact. *Id*. However, a party's nonsuit results in that pleading being no longer a live pleading and it can no longer serve as a basis for a judicial admission. *Interest of H.P.J.*, No. 14-17-00715-CV, 2019 WL 1119612, at *5 (Tex. App.—Houston [14th Dist.] Mar.

11

12, 2019, no pet.) (mem. op.).

Here, Mother non-suited and abandoned her requests for a change in conservatorship and issues surrounding the domicile restriction before the commencement of the jury trial. Mother continued in her request for modification of possession and access, for medical and child support, as well as a request for attorney's fees. Due to the nonsuit, Mother's prior pleading asserting a material and substantial change of circumstances supporting her request for sole managing conservatorship, was no longer a live pleading. *Interest of H.P.J.*, 2019 WL 1119612, at *5. For these reasons, we do not find that Mother made a judicial admission as to change in circumstances justifying a change in conservatorship. *See Epps v. Deboise*, 537 S.W.3d 238, 246 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (holding assertions of material and substantial change relevant to a request for change in terms of visitation and child support do not constitute a judicial admission of material and substantial change regarding change in conservatorship).

Father also asserts that Mother made a "quasi-admission" as to changed circumstances before the jury while testifying. Yet, in his briefing, Father fails to reference the full context of Mother's testimony. The relevant portion of testimony in which Father claims that Mother made a judicial admission is presented in full context as follows:

> MOTHER'S ATTORNEY: [Father] has filed claiming that he should be named as the sole managing conservator or that somebody should be named as sole managing conservator. You understand that?
>
> MOTHER: Yes.
>
> MOTHER'S ATTORNEY: If anyone should be named the sole managing conservator as he asked, who should that be?
>
> MOTHER: It should be myself.
>
> MOTHER'S ATTORNEY: It's your allegation that there is no material and

12

substantial change in circumstances that would warrant altering that 2012 order at this point? You['re] only responding to [Father's] request that somebody be named sole managing conservator?

MOTHER: Well, there is substantial and material changes on his part. The child support was even set at a substitute teacher rate, which he was back then. But he has five degrees, and he's more than capable of working, so there have been material changes on his part.

MOTHER'S ATTORNEY: I don't want the jury to be misled. There are only certain issues that the jury decides in Texas and then there's certain issues that the judge decides. With respect to modifying the conservatorship, who has the primary rights or things like that, are you telling this jury that that needs to be changed?

MOTHER: Right now we're still technically working under the joint custody with me being the primary residential -- primary custodian of my daughter. That's what I've been doing, and she's been doing well. So no, but if they want to name -- if they have to name a sole, then I would appreciate they consider myself.

Viewing the record as a whole, Mother spoke about the change of circumstances relating to her request for a modification of the child support order, a request that still remained as a live pleading at the time. Her admission about change of circumstances regarding child support does not constitute a judicial admission as to changes concerning conservatorship. *Epps*, 537 S.W.3d at 246. Furthermore, Mother's response to Father's questioning that she should be named sole managing conservator was only made as a contingent request, that is, contingent on the jury first reaching Father's request for a change of conservatorship from joint managing conservator to sole managing conservator. On this record, we do not find that Mother made a judicial admission relating to the conservatorship issue.

### b.  *The Evidence*

At trial, Father called Mother as his first witness. Mother testified about different times when Father would notify her that he would or would not be able to exercise his period of possession. Mother also responded to questions about the timeline of the current litigation

13

including when certain motions were filed and when orders were entered. Mother testified she and Father were named joint managing conservators under the prior order and A.N.G. was doing well.

Father then called himself and testified regarding his pursuit of both a law degree and an MBA degree as of the prior order, as well as steps he hoped to take in pursuing his career. He also testified to the reasons for multiple recusals and mandamuses he filed in this suit. At one point, Father testified he attempted to dismiss Mother's initial pleading that sought "change of conservatorship . . . ." He further conceded that Mother was "sufficient in being the designee of the primary residence" so long as their interactions remained amicable. When asked why he insisted he receive "one more day of possession than [Mother]," Father mentioned the reason being so he could receive government benefits. He did testify about enjoying time he spent cooking with A.N.G. and other activities such as "fine arts stuff . . . ." He expressed his desire to care for A.N.G.'s needs and to participate in her growth.

On appeal, Father argues there was evidence presented of "allegations of domestic violence" made by Mother against Father. He argues that because of this evidence, the jury could have reached a conclusion that a material and substantial change in circumstances occurred and warranted a modification of conservatorship. He argues "if credible evidence was presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent or a child then the court is precluded from appointing parents as joint managing conservators."

It appears in his briefing Father attempts to argue that because he testified about abuse allegations made against him by Mother, he should be named the sole managing conservator, even though he is the party against whom allegations were made. We disagree. Father misconstrues

14

what the applicable statute means or what is meant by its terms. *See* TEX. FAM CODE ANN. § 153.004 (stating the trial court shall consider evidence of abuse in appointing a party as sole or joint managing conservator and states it is a rebuttable presumption that appointment of a parent as sole or joint managing conservator with the exclusive right to determine primary residence is not in the best interest of the child if there is credible evidence of past or present abuse by that parent). Father tries to support his argument by going beyond the appellate record and referencing findings made during the final hearing of the prior order and to matters that occurred since trial. However, there was no evidence of abuse or neglect introduced at trial and the trial court made no such finding of abuse. Accordingly, Father's argument fails.

Father also attempts to argue that the record contains evidence of domestic abuse allegations made against him by Mother occurring after the entry of the prior order. He references section 153.013 as a basis for "false reports of child abuse is admissible evidence . . . regarding the terms of conservatorship of a child." *See* TEX. FAM CODE ANN. § 153.013. Father never pleaded any false reporting as a basis for modification in any of his pleadings. Furthermore, no such evidence of any false allegations was offered or admitted into evidence. Mother testified that Father had been absent from A.N.G.'s life and Mother changed her address and her phone number because Father was "harassing" her. But no evidence of any false reports or allegations made by Mother was presented to the jury.

On review of the record and viewing the evidence in a light most favorable to Father, the evidence presented was not sufficient to raise a fact question on whether a material and substantial change of circumstances was warranted. *See* TEX. FAM CODE ANN. § 156.101; *In re C.A.N.M.*, 2005 WL 1356443, at *3. Although the jury heard testimony regarding Father's educational

15

achievements, his career plans, and his complaints about litigation matters, there was no showing of any material or substantial change of circumstances with regard to A.N.G., Father, or Mother. Nor did Father present evidence that a modification would be in the child's best interest. We conclude that the evidence presented by Father failed to raise triable issues of fact for the jury's determination of a modification of the terms and conditions of conservatorship; and thus, the trial court did not err in granting a directed verdict against Father on his request for modification of the parties' conservatorship. *Frederick*, 176 S.W.3d at 279.

Father's first issue is overruled.[3]

## C. Geographic Restriction

In his second issue, Father asserts it was improper for the trial court to modify the geographic restriction imposed on a joint managing conservatorship when the trial court directed the verdict from the jury. He argues that a party may demand a jury trial in the determination of geographic restrictions. *See* TEX. FAM. CODE ANN. § 105.002(c)(1)(E-F). Mother responds that Father effectively waived this issue as he did not cite any authority to substantiate his argument. As we have previously addressed, we are required to construe procedural rules reasonably, yet liberally and consider the importance of a party not losing its right to appeal based on unduly

---

[3] Father makes an additional argument that his pleadings were not defective, and the trial court never provided any opportunity to cure such defects. We find this argument does not need to be addressed as any defects in Father's pleadings were not the basis the trial court granted the directed verdict. Specifically, the trial court stated:

> I find your pleadings, your amended respondent's counter-petition, to be problematic in that in as much as it's a judicial admission, you indicate that only due to these ongoing modification proceedings and the events that occurred have material -- have circumstances materially and substantially changed. . . . And so regardless of that, you were granted the jury trial . . . . But in the entire course of the proceedings you have failed to establish that the circumstances of either yourself or the mother or the child have materially and substantially changed . . . .

Any defects in Father's pleadings were not the basis for the trial court's directed verdict denying the modification and Father was able to present his case. For this reason, whether Father's pleadings were defective or not is not an issue before this Court.

16

technical application of such rules. *Mex-Tex, Inc.*, 150 S.W.3d at 427 n.15. Although Father relies on Section 105.002 of the Texas Family Code in asserting that the modification of the geographical restriction was an issue that should have been made by the jury, he does not otherwise cite to any other authority or further develop his argument. *See* TEX. FAM. CODE ANN. § 105.002(c)(1)(E)-(F). Heeding the warning to construe briefing liberally and noting Father's citation to statutory authority, we will address his second issue. *See* TEX. R. APP. P. 38.1(i); *Mex-Tex, Inc.*, 150 S.W.3d at 427 (finding issue not waived when Appellant cited the statute, and it was unclear what further authority was necessary as the analysis relied on the statutory language).

Father argues the trial court acted improperly when the trial court commented in open court while rendering its decision that a geographical restriction would not be imposed. But we note that the trial court later entered a final order which stated the following concerning geographic restriction:

> IT IS FURTHER ORDERED that [Mother] shall have the exclusive right to designate the child's primary residence within El Paso County, Texas.

> IT IS FURTHER ORDERED that this geographic restriction on the residence of the child shall be lifted if, at the time [Mother] wishes to remove the child from El Paso County, Texas for the purpose of changing the primary residence of the child, [Father] does not reside in El Paso County, Texas.

A written judgment or order will control over a trial court's oral pronouncement. *Interest of D.A.Z.*, 583 S.W.3d 676, 684 (Tex. App.—El Paso 2018, no pet.). Although the trial court pronounced no geographical restriction would be imposed, the final order reflects that the child's primary residence is restricted to El Paso County, Texas. Father argues the language in the final order is a modification of the geographic restriction and therefore should have been left to the jury. Mother argues that the trial court acted properly because it did not contravene the role of the jury.

17

Although we must construe rules regarding an appellant's briefing liberally, we are not required to perform research and develop arguments for an appellant who inadequately briefs its arguments. *Tucker*, 2020 WL 3969586, at *1. Pursuant to Section 105.002(c)(1)(E)-(F) of the Texas Family Code, it is within the province of the jury to decide whether a geographic restriction will be imposed and if so, what area the restriction would include. *See* TEX. FAM. CODE ANN. § 105.002(c)(1)(E)-(F). The prior order included a geographic restriction to El Paso County, Texas and the current written order includes a geographic restriction to El Paso County, Texas. The only difference between the two orders is the inclusion of contingent language that applies only in the event that Father himself first moves out of El Paso County, which is not currently applicable. In the context of this case and under these facts, we find the trial court did not invade issues within the province of the jury. Because there was no modification as to whether a geographic restriction existed or what area the restriction would include, the trial court made no modification of the geographic restriction. TEX. FAM. CODE ANN. § 105.002(c)(1)(E)-(F). Without the benefit of any further authority favorable to Father, we cannot find the trial court abused its discretion.

Father's second issue is overruled.

### III. CONCLUSION

Having overruled all issues, we affirm.


GINA M. PALAFOX, Justice

May 19, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

18